UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Ronnie Chavious, | ) | Civil Action No. 5:20-04058-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| Kilolo Kijakazi,[1] Acting Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil

Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition

for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial

review of a final decision the Commissioner of Social Security ("Commissioner"), denying his claim

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the

Social Security Act ("the Act"). Having carefully considered the parties' submissions and the

applicable law, the court remands the Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

        A.  Procedural History

        On October 16, 2017, Plaintiff protectively filed applications for DIB and SSI alleging a

disability onset date of March 14, 2012. Tr. 236; 248.[2] His applications were denied initially on June

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the named defendant in this action.

[2] The application references the date of completion as November 15, 2017. Tr. 248. However, other paperwork provides the filing date of DIB as October 16, 2017, and the ALJ's decision, as well as Plaintiff's Brief, state the application date is October 16, 2017. Tr. 15; 169; Pl.'s Br. at 1; ECF No. 22.

27, 2018, and upon reconsideration on November 8, 2018. Tr. 171-180; 168-169.[3] Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). Tr.186. On October 21, 2019, a hearing was held before an ALJ at which Plaintiff and a vocational expert ("VE") testified. Tr. 34-105. On January 2, 2020, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. Tr. 15-33. Plaintiff requested review of the decision by the Appeals Council, and on September 18, 2020, the Appeals Council denied the request for review, making the ALJ's January 2, 2020 decision the final decision of the Commissioner for purposes of judicial review. Tr. 1-6. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on November 20, 2020. ECF No. 1.

B. Plaintiff's Background

As listed on both applications for benefits, Plaintiff was born on July 6, 1966. Tr. 236; 248. However, it appears Plaintiff's date of birth is in dispute. At the hearing, Plaintiff testified his birthday was July 4, 1965. Tr. 48. He submitted a post-hearing birth certificate, identifying the name of the registrant as "Rondney Chavious" and the date of birth as July 4, 1965. Tr. 271. Within the ALJ's decision, the ALJ relied upon data in the Social Security records to determine Plaintiff's date of birth to be July 6, 1966. Tr. 27. In Plaintiff's Brief, he notes the discrepancy in date of birth is immaterial to the disability determination outcome because both dates place him over 50 but under 55 as of the date of the decision. Pl's. Br., 21.

In his Disability Report, dated November 17, 2017, Plaintiff indicated that he completed the twelfth grade, and in response to whether he had any specialized job training, trade, or vocational school experience, he listed auto mechanic and carpentry and masonry work in the 1980s. Tr. 274. Plaintiff indicated that he became unable to work on March 14, 2012 due to his conditions. Tr. 273.

---

[3] The reconsideration is dated November 8, 2018; however, both the ALJ's decision, as well as Plaintiff's Brief indicate the date of the denial upon reconsideration is November 9, 2018. Tr. 15; Pl.'s Br. 1.

Plaintiff lists those conditions as sciatica; degenerative disc disease-lumbar with stenosis; left knee medical meniscus tear; vision problems; migraines; anxiety, depression; and asthma. Tr. 273. Plaintiff's past relevant work ("PRW") includes construction laborer, laborer on a chicken farm, and employment as an electrical worker. Tr. 274. Plaintiff lists his height as 5 feet, 6 inches and his weight as 185 pounds. Tr. 273.[4] He indicated that his conditions cause him pain or other symptoms. *Id.* In a subsequent Disability Report-Appeal, dated August 14, 2018, he wrote that his back pain, knee pain, and asthma had gotten worse, and he was not able to stand as long due to his back and knee pain. Tr. 293. He further indicated that since he last completed a disability report, he had begun experiencing chest pains. *Id.* at 294. In a more recent Disability Report-Appeal, dated May 15, 2019, Plaintiff indicated that his medical conditions have changed since November 2018 in that he has been having more blood in his stool, his back pain has gotten worse, and his left knee pain had gotten worse and caused more swelling. Tr. 306. Plaintiff indicated that he cannot stand for very long or walk very far as a result of these conditions. *Id.*

In his Work History Report, Plaintiff lists the following jobs as those he has held in the past 15 years prior to becoming unable to work: heavy equipment driver; construction worker; forklift operator; machine operator; electrical worker; and auto mechanic. Tr. 285.

C. The Administrative Hearing

On October 21, 2019, Plaintiff appeared in person with counsel at his administrative hearing before an ALJ in Augusta, Georgia. Tr. 37. VE Adger J. Brown also appeared via telephone. *Id.* at 37.

---

[4] In the ALJ's decision, the ALJ notes that Plaintiff is approximately 220 to 230 pounds, according to records found at B4F and B12F. Tr. 24.

1.  Plaintiff's Testimony

Plaintiff testified that he is married and has a teenage son and an adult daughter. Tr. 49-50. He testified that, at the time of the hearing, his wife was pregnant with a baby to be born the following January. Tr. 50. Plaintiff lives in his deceased mother's home with his wife and son. *Id.* At the time of the hearing, he stated his weight was 231 pounds. Tr. 52. Plaintiff testified that he is not engaged in an exercise program. *Id.* at 53. Plaintiff testified that he did not have a driver's license, and he did not drive to the hearing. *Id.* Plaintiff indicated that he put himself, his wife, and his son on Medicaid. *Id.* at 54. Plaintiff testified that he graduated from high school; however, he had issues with reading while in school. *Id.* at 55. Plaintiff indicated that his reading comprehension issues may have been related to a car accident he was involved in when he was younger where he suffered some sort of head injury. *Id.* Plaintiff testified that he received help from another individual in filling out the application when he filed for Social Security benefits. *Id.* at 56. Plaintiff testified he is able to write down telephone messages, count to 100, perform simple math such as addition and subtraction, and make change for a $20 bill. *Id.* at 56-57.

Plaintiff testified that after high school, he received training as an auto mechanic, a carpenter and a brick mason. *Id.* at 57. Plaintiff testified that he went to vocational rehabilitation, but he was denied assistance after indicating he had back problems. *Id.* In response to questions about his work history, Plaintiff testified that in 1999, he worked as a filling doffer, placing empty bobbins onto the machine. *Id.* at 59. According to Plaintiff, this job required him to stand the majority of the time and lift anywhere between 45 to 50 pounds. *Id.* at 59-60. After leaving this position, Plaintiff performed electrical work at a factory as an electrician's helper. *Id.* at 61. Plaintiff also worked in a meat packing plant deboning chicken. *Id.* at 61-62. In 2006, Plaintiff testified that he worked at Kimberly Clark as

4

a machine operator. *Id.* at 62. Plaintiff also worked at CVS Distribution as a forklift operator. *Id.* at 62-63. Plaintiff testified that since 2012, he has not worked for pay. *Id.* at 65.

The ALJ asked Plaintiff about his impairments. Plaintiff testified that his back issues seem to be getting worse in that he is unable to walk, and he is always in pain. *Id.* at 66-67. Plaintiff further testified that he avoids activities, including bending over or walking long distances due to his back pain. *Id.* at 67-68. Plaintiff testified that he sees Dr. Hawke once a month for treatment of his back impairment. *Id.* at 67-68. Plaintiff testified that he sees Dr. Hoffer for his knee problems, and Dr. Hoffer has discussed Plaintiff undergoing knee surgery. *Id.* at 69-70. Plaintiff testified that he receives some of his treatment at emergency room visits. *Id.* at 70-71. Plaintiff testified that he has been using a cane in his left hand since 2009. *Id.* at 72. Plaintiff testified that Dr. Hoffer gave him the cane in 2009, and he uses his cane whenever he leaves his home, and sometimes walking within his home, as well. *Id.* at 72-73. Plaintiff indicated at the hearing that he had gone to the emergency room in the past year for asthma attacks. *Id.* at 73. Plaintiff stated he is taking medication for his depression, but he is otherwise not undergoing any current treatment for his mental health conditions. *Id.* at 74. Upon questioning about the type of medication he takes for his mental health conditions, Plaintiff testified that he takes two OxyContin pills a day, as well as Gabapentin, though he did not indicate the frequency of dosage. *Id.* at 75. Plaintiff testified he also takes medication for his respiratory issues. *Id.* at 76. Plaintiff also told the ALJ that he has been seen by a doctor because he has blood in his stool. *Id.* The ALJ asked Plaintiff about the glasses he was wearing, and Plaintiff explained that they were not prescription glasses but were readers to help him see better. *Id.* at 77-78.

Plaintiff testified that a normal day for him included taking medication to ensure his back pain does not prevent him from getting a full night of sleep. *Id.* at 79. Plaintiff testified he does not help with any household chores. *Id.* Plaintiff testified that he does not help with yardwork. *Id.* at 80. During the day, Plaintiff uses a recliner that has a massager for his back. *Id.* Outside of the home, Plaintiff

will attend his son's football games. *Id.* at 81. In response to questions from his own counsel, Plaintiff indicated that he goes to church twice a month, and sometimes the pastor will come to the home to minister to his family. *Id.* at 82. While at church, Plaintiff testified that he has difficulty sitting through the hour and a half long service. *Id.* at 82-83. Plaintiff's counsel also asked him about his cane use. In response to those questions, Plaintiff testified that he uses the cane for his back issues. *Id.* at 83. Plaintiff further testified that he has a brace on his left knee, as well as a brace on his back. *Id.* at 84. Plaintiff testified that once he obtained Medicaid coverage, he was able to seek treatment from physicians. *Id.* at 85. He also testified that standing brings some relief to his back pain and reduces the chance that he will feel an increase in his blood pressure. *Id.* at 85-86. Plaintiff testified that he is unable to sit for longer than 45 minutes. *Id.* at 86. Plaintiff explained that his medical conditions have caused him to feel depressed because he is unable to participate in activities or things he used to do. *Id.* at 89-90.

    2.   Testimony of the VE

VE Adger Brown also testified at the administrative hearing. Tr. 92. The VE described Plaintiff's PRW as: (1) winding machine operator, Dictionary of Occupational Titles ("DOT") number 681.685-150, semi-skilled, SVP of 3, and an exertional level of medium or heavy as actually performed, but is considered light work as described in the DOT; (2) electrician's helper, DOT number 829.684-022, semi-skilled, SVP of 3, and an exertional level of medium work; (3) chicken deboner, DOT number 525.687-066, unskilled, SVP of 2, and an exertional level of light work; (4) packaging machine operator, DOT number 920.685-078, unskilled, SVP of 2, and an exertional level of light as actually performed, but is considered medium work as described in the DOT; and (5) a composite position of forklift operator, 921.683-050, semi-skilled, SVP of 3, and an exertional level of medium work, combined with order puller, DOT 922.687-058, unskilled, SVP of 2, and an

exertional level of medium work, making the job an SVP of 3, with an exertional level of medium as actually performed. Tr. 93-94.

> The ALJ asked the VE a series of hypotheticals. The ALJ first asked the VE:
>
> assume a hypothetical individual of the [c]laimant's age, his education, and with those five different jobs that you classified for us. The last one – the fifth one being a composite work that you've classified. With the following limitations, limited to the light exertional level as defined by the regulations, with no more than occasional use of the left lower extremity for foot controls. No more than occasional stooping, kneeling, crouching, crawling, balancing, and climbing ramps and stairs, no climbing ladders, ropes, or scaffolds. No more than occasional exposure to hazards such as unprotected heights and dangerous machinery. No more than frequent exposure to dust, fumes, gases, odors, and pulmonary irritants. Furthermore, this individual is limited to simple, routine tasks, but is able to maintain concentration, persistence, and pace for periods of at least two hours at a time, perform activities within a schedule, maintain regular attendance, complete a normal workday and work week, is capable of performing GED reasoning development level II jobs. Given all the limitations of Hypothetical #1, can that hypothetical worker do any of those past jobs that the [c]laimant had performed, either as they're generally performed in the national economy, or as the [c]laimant actually performed them?

Tr. 94-95. The VE responded that the winding machine operator, as actually performed by Plaintiff would be excluded, but not as generally performed in the economy, the chicken deboner position would still be available, and the packaging machine operator, as performed by Plaintiff but not as generally performed would also be available Tr. 95. The ALJ then posted a second hypothetical to the VE:

> Hypothetical #2 has all the same limitations given in Hypothetical #1, with the following additional limitations. The worker needs a cane for walking and no walking on uneven terrain. With those two additional limitations, can that worker still be this winding machine operator as it's generally performed, the chicken deboner, or the package machine operator as the [c]laimant actually performed it?

Tr. 95. The VE testified that all work would be excluded, given this hypothetical. *Id.* The ALJ then asked whether there was any work at the light exertional level given all the limitations from both Hypothetical #1 and Hypothetical #2. *Id.* at 96. The VE sought clarification whether the cane was needed for walking only and not balance, to which the ALJ applied that was correct. *Id.* The VE

responded that there was work available at the light or unskilled level including work for assemblers, quality control examiners, and graders and sorters. Tr. 96. The ALJ then asked the VE a third hypothetical:

> Hypothetical #3 has all the same limitations given in Hypotheticals 1 and 2 together with the following change. The worker is limited to the sedentary exertional level as defined by the regulations. I understand that would preclude any work the [c]laimant had done in the past, but is there any other work that would be available to this hypothetical worker with all the limitations of 1 and 2 together, but at this sedentary?

Tr. 96. The VE responded that there were similar jobs both at the sedentary and unskilled level, but there would be a lesser number of positions available for the following jobs, including assemblers, quality control managers, and hand packers and packagers. Tr. 95-96. Finally, the ALJ sought to clarify the impact of the use of a cane. The ALJ asked the VE whether the use of a cane not only to walk, but also for standing, would preclude all work. Tr. 96. The VE responded that it would not preclude all work but would reduce the number of jobs available to a point where there would be insignificant numbers available at the light level of exertion in the job market. Tr. 97. The ALJ then asked the VE whether the three jobs identified in Hypothetical #3 would be available at a sedentary level if the worker needed to cane to stand, as well as walk. *Id.* The VE responded that the jobs would be available. *Id.* The ALJ provided another hypothetical to the VE:

> Hypothetical #4, you've got this hypothetical worker, and regardless of any other limitations that he or she may have, if any, but they're going to be off task 20% of the workday or more. That's in addition to the normal breaks provided, and will continue on a recurring basis. Does that allow for any work at gainful levels at any exertional level?

Tr. 97-98. The VE testified that all work would be precluded under those conditions. *Id.* The VE further testified that if somebody was off task 15% of the time, that is the threshold for which someone becomes unable to work. Tr. 98. The ALJ then offered a fifth hypothetical to the VE:

> For my fifth hypothetical, I want to approach from a slightly different angle. That is absences as a given number of days per month, and let me just cut to the chase. What

is your opinion? How many days per month on a recurring basis are absences work preclusive at any exertional level, especially at the unskilled entry level?

Tr. 98-99. The VE responded that if someone is missing two days a month or more consistently, he or she would be unable to work. When asked whether his testimony had been consistent with the DOT, the VE testified that the DOT does not address time off task or absences, nor does it address the use of a cane, but that his testimony comes from his observations and having worked with employers. *Id.* at 99. In response to a follow up question, the VE said the testimony regarding the cane was based on his education, training and working with employers. *Id.*

Upon questioning by Plaintiff's counsel, the VE explained that someone who needed to elevate their legs or recline 15% of the day or more would be precluded from performing the jobs cited. *Id.* at 99-100. Counsel asked the VE if an individual needed a cane in a standing position, and also required a sit-stand option every 30 minutes where they would need to be performing at least some significant part of the work in an alternating position, would that preclude the sedentary jobs? *Id.* at 100. The VE confirmed that these stipulations would eliminate work. *Id.* Finally, Plaintiff's counsel asked whether an individual would be precluded from most unskilled sedentary jobs if that individual could not perform work requiring fine visual acuity, and the VE responded it would preclude a large number of jobs, but not necessarily the light industrial jobs or all of the sedentary jobs. *Id.*

II. Discussion

     A. The ALJ's Findings

In his January 2, 2020, decision, the ALJ made the following findings of fact and conclusions of law:

     1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

     2.      The claimant has not engaged in substantial gainful activity since March 14, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: lumbar spine degenerative disc disease; left knee medial meniscus tear; obesity; asthma; neurocognitive disorder; adjustment disorder with mixed anxiety and depression; specific learning disorder in reading (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally operate foot controls with the left lower extremity; requires a cane for walking only, and cannot walk on uneven terrain; occasionally stoop, kneel, crouch, crawl, balance, and climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasional exposure to hazards such as unprotected heights and dangerous machinery; frequent exposure to dust, fumes, gases, odors and pulmonary irritants. The claimant is limited to simple, routine tasks but is able to maintain concentration, persistence, and pace for periods for at least two hours at a time. He can perform activities within a schedule, maintain regular attendance, complete a normal workday and workweek, and can perform jobs up to GED Reasoning Development Level 2.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on July 6, 1966, and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 14, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 18-28.

B. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[5] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. §§

_____

[5] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525, § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he or she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his or her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he or she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2.   The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied

the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III.     Analysis

Plaintiff raises several arguments to support a finding that remand is appropriate in this case. Briefly, Plaintiff argues that: (1) Plaintiff's ability to perform substantial work remains undetermined because there is a potential conflict between the jobs available and the DOT; (2) the ALJ failed to acknowledge Medical Vocational Guidelines Rule 202.00(d); (3) the ALJ failed to properly explain his RFC findings in that the ALJ failed to explain the assessment of Plaintiff's previous impairments

in a manner allowing for review, and the ALJ failed to review the evidence; and (4) the ALJ failed to properly evaluate Plaintiff's subjective symptoms. The court will address each argument in turn.

### A.  Apparent Conflict with the DOT

Plaintiff first argues that there is an apparent conflict with the ALJ's RFC assessment and the DOT. Plaintiff contends that at the hearing, the VE's testimony of the jobs that Plaintiff could perform all have a GED Reasoning Code of 2. Pl.'s Br., 19. Plaintiff cites to the DOT to posit that a GED Reasoning Code of 2 requires the employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Pl.'s Br. 19 (citing the DOT, 1991 WL 688702 (2008)). However, Plaintiff argues that the ALJ's RFC determination limiting Plaintiff to simple, routine tasks conflicts with a finding that Plaintiff can perform work that has a GED reasoning code of 2. Pl.'s Br., 20. The Commissioner argues that the VE's testimony does not conflict with the information contained in the DOT. Def.'s Br. 8.

Social Security Ruling 00-4p instructs an ALJ to identify and resolve apparent conflicts before relying on a vocational expert's testimony. *Pearson v. Colvin*, 810 F.3d 204, 209-210 (4th Cir. 2015) (explaining that the Ruling uses several adjectives to describe the type of conflicts to identify and resolve, before setting forth the "apparent conflict" standard); *see also Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019) (holding that an ALJ must ensure that any "apparent" conflicts between the DOT and testimony from the VE is resolved). Plaintiff frames his argument as finding that there is an apparent conflict between limiting Plaintiff to "simple routine tasks" and also finding Plaintiff can performed jobs requiring him to understand detailed instructions.

As defined by the DOT, Reasoning Level 2 refers to "detailed but uninvolved written oral instructions." DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (2008). The Commissioner argues that the Fourth Circuit has previously addressed a similar argument in *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019). In *Lawrence*, the Fourth Circuit was presented with

the question of whether there is an apparent conflict between an RFC and the DOT's definition of Level 2 reasoning, where the RFC limited the individual to "simple, routine, repetitive tasks." *Lawrence*, 941 F.3d at 143. The Fourth Circuit determined that there is no conflict between these two definitions because detailed instructions are often less complex, and the terms "simple" and "uninvolved" both connote instructions that are not complicated or otherwise intricate. *Id.* Like *Lawrence*, the ALJ in this case limited Plaintiff to "simple, routine, tasks." Tr. 22. In following the reasoning of the Fourth Circuit, this court does not agree with Plaintiff that the limitation to "simple, routine tasks" is an apparent conflict to understanding detailed instructions. Therefore, the undersigned finds that the ALJ's reasoning is supported by substantial evidence and complies with applicable law.

B.  Medical Vocational Guidelines Rule 202.00(d)

Similarly, Plaintiff argues that test results within the evidence of record indicate that he should be found disabled pursuant to Medical Vocational Guidelines 202.00(d). Plaintiff relies almost exclusively upon the findings of Dr. Spokane, specifically that: (1) Plaintiff had a "specific learning disorder in reading"; (2) Plaintiff had a score of 55 on the word reading subtest, indicating a 1.1 grade level equivalent; (3) Plaintiff had a score of 55 on the sentence comprehension subtest indicting less than a kindergarten grade level equivalent; (4) Plaintiff had a score of 59 on math computations indicating a 2.2 grade level equivalent; and (5) he had a very poor fund of knowledge. Pl.'s Br. 21. Further, Plaintiff points out that the records indicate he attended Freeman Vocational School instead of regular high school classes.  Pl.'s Br. 22. This evidence, Plaintiff argues, supports a finding that he is functionally illiterate and should be found disabled. In response, the Commissioner argues that an individual who is illiterate is generally unable to read and write, and the evidence of record supports a finding that Plaintiff is capable of these skills. Def.'s Br. 11.

The Commissioner points out that the regulations provide that an individual closely approaching advanced age who (1) can no longer perform his past relevant work, if any; (2) has unskilled experience or no readily transferable skills; and (3) is illiterate or unable to communicate in English warrants a finding that the individual is disabled. *See* 20 C.F.R. pt. 404, subpt. P. app. 2, § 202.00(d). The Commissioner points out that the ALJ applied Grid Rules 202.21 and 202.14 because Plaintiff was a younger individual for part of the relevant period before changing age categories. Further, the Commissioner noted that the ALJ determined transferability of job skills was not material to the disability determination because the Grid rules support finding Plaintiff is "not disabled" whether or not he transferrable skills. Plaintiff does not focus on these arguments so much as he focuses on the fact that he believes he should be found illiterate. Generally, an illiterate person has little or no formal education. 20 C.F.R. §§ 404.1564(b)(1); 416.964(b)(1). In reviewing the evidence of record, Plaintiff testified at the hearing that he was able to write down a telephone message. Tr. 56. He testified that he graduated from high school. Tr. 55. Dr. Spokane's records indicate that Plaintiff indeed had low test scores. However, in reviewing the entirety of the medical record, Dr. Spokane also found Plaintiff had "significantly diminished motivation," which the ALJ thought was suggestive of malingering. Dr. Spokane also indicated that Plaintiff's "effort was minimal," and that his scores were "difficult to explain in the absence of any additional records or reports of cognitive testing." Tr. 796. Dr. Spokane's opinion was that Plaintiff had mildly impaired activities of daily living and social functioning, and moderately impaired concentration, persistence, and pace. Tr. 797. Therefore, while Dr. Spokane's test scores indicate a diminished level of functioning, Dr. Spokane's assessment appears to question the findings, as well. In reviewing the ALJ's analysis, the ALJ found significant the fact that the doctor indicated Plaintiff's effort was poor, and further found that the test scores appeared in conflict with Plaintiff's ability to write a complete sentence. Tr. 22; 25. Nonetheless, the ALJ found that Plaintiff had a learning disorder, as well as a neurocognitive disorder, and indicated

that he accounted for these mental limitations within the RFC. This court finds that the ALJ's assessment is supported by substantial evidence in that it is clear the ALJ considered Dr. Spokane's records but found the test scores contradictory to Plaintiff's own testimony about his abilities, as well as the notes indicating Plaintiff exhibited minimal effort. Moreover, this court does not find that the ALJ's failure to find Plaintiff illiterate as provided for under 202.00(d) is cause for remand. The evidence of record does not support a finding that Plaintiff is illiterate as defined by the Regulations. Accordingly, this court finds that the ALJ's determination that Plaintiff was not presumptively disabled under the Grids is supported by substantial evidence in the record.

C.  Explanation of the RFC

Plaintiff next argues that the ALJ did not properly assess Plaintiff's RFC as required by SSR 96-8p. Plaintiff presents two errors as it relates to the RFC assessment: (1) the ALJ failed to perform a function-by-function assessment of Plaintiff's physical capabilities; and (2) the ALJ failed to review and assess the medical evidence of record. The Commissioner argues substantial evidence supports the ALJ's assessment of the RFC.

As support for his contention that the ALJ did not properly assess Plaintiff's physical capabilities or functional limitations, Plaintiff argues that the ALJ incorrectly found that a prior decision still on appeal was not binding and therefore did not appropriately weigh the prior decision in compliance with *Albright v. Commissioner*, 174 F.3d 473 (4th Cir. 1999) and *Lively v. Sec. of Health and Human Servs*, 820 F.2d 1391 (4th Cir. 1987).  In the prior decision, Plaintiff points out that the ALJ found Plaintiff would need to alternate sitting and standing every 30 minutes and would not be able to perform work requiring fine visual acuity. Pl.'s Br. 25. This finding, Plaintiff argues, is at odds with the ALJ's more recent determination that Plaintiff's "low vision" is a non-severe

impairment.[6] *Id.* Plaintiff further argues that the ALJ summarily stated the RFC without a proper explanation as set forth in Social Security Ruling 96-8p and cherry-picked evidence to support the RFC assessment, contrary to *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377 (4th Cir. 2021). As to the ALJ's failure to consider all medical evidence, Plaintiff argues that there was extensive evidence that he suffered from a debilitating back condition, including diagnostic imaging such as lumbar X-rays and CT scans, all of which he argues the ALJ simply ignored. Pl.'s Br. 27-30.

The Commissioner disputes Plaintiff's contentions that the ALJ focused solely on evidence that was less favorable to Plaintiff or ignored other evidence of record. Def.'s Br. 13. The Commissioner further argues that reliance on *Dowling* is misplaced because the deficiencies in analyzing the RFC analysis in *Dowling* were critically relevant to that claimant's conditions, therefore remand for additional articulation of the RFC was needed in order to permit a proper review. Def.'s Br. 14. By contrast, the Commissioner argues that the ALJ discussed the medical records and explained how the medical records factored into the ALJ's RFC assessment, thereby allowing for meaningful judicial review. *Id.*

---

[6] Within his brief, the Plaintiff states that the ALJ incorrectly explained that the prior decision was not final as it was still on appeal, and therefore did not appropriately weigh a prior decision as required by *Albright* and *Lively*. In *Albright*, the Fourth Circuit explained that the SSA treats successive applications for disability benefits as a claim apart from that of one earlier filed to the extent that the more recent application alleges a previously unadjudicated time period. *Albright*, 174 F.3d at 476. Further, absent an identity of claims, *res judicata* does not apply. *Id.* As pointed out by the Commissioner and as provided for in the record during the initial Disability Determination, in considering *Albright* (as well as Acquiescence Ruling 00-1(4)), *res judicata* did not apply to this current application because Plaintiff alleges new mental allegations. While Plaintiff argues that the ALJ did not appropriately weigh the prior decision, he does not explain what effect, if any, it would have had on the decision. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (explaining that the party seeking to have a judgment set aside because of an erroneous ruling must show what prejudice resulted); *see also Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (stating that remand is not required where, notwithstanding an ALJ's error, the ALJ would have reached the same result). Accordingly, while this court agrees that the ALJ misstated the fact that the prior decision was not final, Plaintiff has not argued what effect, if any, the ALJ's failure to appropriately weigh the prior decision had on the more recent decision or how it would have altered the outcome of the RFC determination.

As to Plaintiff's argument that the ALJ ignored evidence related to his back impairment, the Commissioner argues that the ALJ discussed all of the evidence, including objective findings showing lumbar spine issues, as well as evidence reflecting more mild findings. Def.'s Br. 12-13.

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946. An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. §§ 404.1545(a)(3) and (4), 416.945(a)(3) and (4). Social Security Ruling 96–8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184 at *7. The ALJ must discuss the claimant's ability to "perform sustained work activities in an ordinary work setting" on a regular work schedule. *Id.* Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

Plaintiff's main contention to support remand based on the RFC determination is that the ALJ made an RFC conclusion citing solely to evidence that would support this pre-ordained conclusion, while ignoring evidence indicative of more debilitating limitations. Plaintiff compares what he states is an erroneous RFC determination to that of the analysis performed in *Dowling* to argue that there is not a proper function-by-function analysis as set forth in the Regulations. The Commissioner disagrees that the ALJ failed to perform a function-by-function analysis. Instead, the Commissioner

argues that the ALJ considered all evidence of record and explained what impact the evidence had in determining the RFC.

In *Dowling*, the Fourth Circuit determined that the ALJ relied on an incorrect regulatory framework in determining the RFC. *Dowling* 985 F.3d at 387. As a result, the ALJ did not conduct a proper analysis in that the ALJ first stated the RFC and then concluded that the limitations caused by the impairments were supported by that finding. *Id.* at 388. Plaintiff argues that much like *Dowling*, the ALJ fails to conduct the proper RFC analysis in that he fails to explain how the objective evidence does not support his reports of pain, numbness, and limited motion in his spine. In considering the medical evidence of record, Plaintiff argues that the ALJ simply ignores or mischaracterizes evidence to support his RFC assessment, particularly with respect to Plaintiff's back impairment.

The *Dowling* court found that because the ALJ did not conduct a separate inquiry of the RFC apart from a symptom evaluation, the ALJ erred by treating them as one and the same. *Id*. at 377. Such is the case here. Prior to assessing the RFC, the ALJ determined that Plaintiff's lumbar spine degenerative disc disease was a severe impairment. Then, after providing the RFC assessment, the ALJ's discussion of Plaintiff's impairments appear to solely be an assessment of the "intensity, persistence, and limiting effects of his symptoms" as opposed to discussing any functional limitations. Specifically, as it relates to Plaintiff's back impairments and Plaintiff's allegations of limited motion, the ALJ focuses heavily on Plaintiff's reports of pain, and what limiting effects, if any, should be included based on Plaintiff's statements. This is particularly troubling because the ALJ discusses the potential for "malingering" in both his discussion of Plaintiff's back impairments, as well as his knee impairments. Indeed, after discussing Plaintiff's symptoms, the ALJ states "after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record, for the reasons explained above", without providing any distinction between the RFC assessment and the assessment of Plaintiff' symptoms. Tr. 25. This lends further credence to a finding that that the ALJ did not conduct the proper function-by-function analysis, but instead blended the two analyses together. Accordingly, this court cannot conduct a meaningful review of the ALJ's RFC assessment. Therefore, this court finds it necessary to remand these proceedings for the ALJ to adequately articulate the RFC as set forth in 96-8p and as supported by the evidence as it relates to the RFC assessment.

D.  ALJ's Evaluation of Plaintiff's Subjective Symptoms

Finally, Plaintiff argues the ALJ failed to properly evaluate his subjective symptoms. Specifically, Plaintiff argues that, much like his argument related to the improper RFC assessment, the ALJ did not properly consider the objective evidence of record or otherwise properly assess Plaintiff's statements regarding his activities due to his allegations of pain. SSR 16-3p provides a two-step process for evaluating an individual's symptoms. Because this court has determined that the ALJ did not perform an RFC assessment distinct from Plaintiff's symptom evaluation, this court finds that upon remand, the ALJ should also re-evaluate Plaintiff's reports of pain associated with his impairments, relying on the medical evidence of record.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds remand is warranted. Based on the foregoing, the court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this order.

IT IS SO ORDERED

March 23, 2022                                     Kaymani D. West
Florence, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**